# UNITED STATES DISTRICT COURT
Eastern District of Kentucky
Central Division at Lexington

| | | |
|---|---|---|
| Jewell Wireman )<br>    *Plaintiff* )<br> )<br>v. )<br> )<br>Equifax Information Services, LLC )<br>    *Defendant* )<br>Serve: )<br>    Corporation Service Company )<br>    421 West Main Street )<br>    Frankfort, KY 40601 )<br> )<br>Heyman Law, LLC )<br>    *Defendant* )<br>Serve: )<br>    D. Andrew Heyman )<br>    1212 Sycamore Street, Suite 32 )<br>    Cincinnati, OH 45202 )<br> )<br>Trans Union, LLC )<br>    *Defendant* )<br>Serve: )<br>    The Prentice Hall Corp. System )<br>    421 West Main Street )<br>    Frankfort, KY 40601 )<br> )<br>World Finance Company of Kentucky, LLC )<br>d/b/a World Finance Corporation )<br>    *Defendant* )<br>Serve: )<br>    CT Corporation System )<br>    306 West Main Street, Suite 512 )<br>    Frankfort, KY 40601 )<br> ) | Case No. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1. This is a complaint for damages for Defendants' separate violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 28 U.S.C. § 1331; the FDCPA, 15 U.S.C. § 1692k; and the FCRA, 15 U.S.C. § 1681p. Venue is proper, because the relevant facts and events that affected and/or damaged Plaintiff occurred within Madison County, Kentucky which is located within this District.

## PARTIES

3. Plaintiff Jewell Wireman is a natural person who resides in Madison County, Kentucky and a "consumer" within the meaning of the FDCPA (15 U.S.C. § 1692a(3)) and the FCRA (15 U.S.C. § 1681a(c)).

4. Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company with principal place of business located at 1550 Peachtree Street NW, Atlanta, GA 30309 registered to do business with Kentucky Secretary of State. Equifax is a "consumer reporting agency" within the meaning of the FCRA.

5. Defendant Heyman Law, LLC ("Heyman Law") is a foreign limited liability company registered with the Kentucky Secretary of State and regularly engages in the business of collecting or attempting to collect consumer debts owed or due other persons or institutions in Kentucky. Heyman's principal place of business is located at 212 Sycamore Street, Suite 32, Cincinnati, OH 45202.

6. Heyman Law is a "debt collector" as defined by the FDCPA at 15 U.S.C. §1692a(6) inasmuch as it regularly collects consumer individual debts of natural persons who are citizens of Kentucky using instrumentalities of interstate commerce or the mails in its business, the principal purpose of which is the collection of debts.

7. Heyman Law is also a "furnisher of information" and user of credit information within the meaning of the FCRA.

8. Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company with principal place of business located at 555 West Adams, Chicago, IL 60661. Trans Union is registered to do business with Kentucky Secretary of State. Trans Union is a "consumer reporting agency" within the meaning of the FCRA.

9. Defendant World Finance Company of Kentucky, LLC *d/b/a* World Finance Corp. ("WFC") is a Kentucky limited liability company with principal place of business located at 108 Frederick Street, Greenville, SC 29607 registered to do business with the Kentucky Secretary of State and a furnisher of information within the meaning of the FCRA.

## STATEMENT OF FACTS

10. Plaintiff Jewell Wireman ("Wireman") is keenly aware of the importance of her credit score and regularly reviews her consumer credit reports.

11. As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."
>
> But even if you're not in the market for a loan, good credit can have a major impact, Weston says.
>
> "Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.
>
> Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.
>
> Good credit can signify that your financial situation—and the rest of

your life—is on the right track.[1]

12. A recent review of her credit reports uncovered several items of incorrect and inaccurate credit information furnished by Defendant World Finance Company of Kentucky, LLC *d/b/a* World Finance Corporation and Heyman Law, LLC ("Heyman Law").

13. Plaintiff Wireman also discovered an anomalous "hard credit" inquiry published on her credit report by Defendant Trans Union, LLC that was made by Defendant Heyman Law.

I. **Facts Relating to World Finance Company of Kentucky, LLC *d/b/a* World Finance Corporation and Equifax Information Services, LLC**

14. Defendant World Finance Company of Kentucky, LLC *d/b/a* World Finance Corporation ("WFC") is a consumer loan company regulated by Kentucky consumer loan company statutes, KRS 286.4-410 *et seq.*

15. In October of 2015, Ms. Wireman took out a personal loan from WFC (the "WFC Loan").

16. The WFC Loan was a precomputed finance charge loan which means the WFC Loan is not subject to interest but instead has a precomputed finance charge added up-front to the principal in lieu of interest and included in the repayment amount. The precomputed finance charge is the time value for use of the money and represents Ms. Wireman's consideration to Mariner. *Serv. Fin. Co. v. Ware*, 473 S.W.3d 98, 106 (Ky. Ct. App. 2015). Consequently, the WFC Loan does not set forth a recoverable contract-rate of interest. *Id.*

17. Upon review of her credit reports, Ms. Wireman discovered that WFC was reporting negative credit information concerning the WFC Loan on all three of her consumer credit reports published by the three major credit reporting agencies ("CRA's"): Defendant Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); and Defendant Trans Union, LLC ("Trans Union") (the "WFC Tradeline").

18. The WFC Tradeline was completely inconsistent on each of her credit reports in that, Experian was reporting the WFC Tradeline as a charged-off account with a "recent balance" of $427, a past-due balance of $721, and a date of first delinquency ("DOFD") of January 2016. Trans Union was reporting a "balance" of $427, a past due amount of $708, and a DOFD of March 2016. Equifax was reporting a balance of $760, a past-due amount of $760, and DOFD of April 2016.

19. On May 23, 2020 Ms. Wireman sent a dispute letter directly to WFC and WFC

---

[1] http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

responded to Ms. Wireman's dispute in a letter dated June 23, 2020.

20. Ms. Wireman sent multiple disputes to the CRA's that included disputes of the conflicting credit information furnished by WFC in connection with the WFC Loan.

21. Ms. Wireman's dispute letters dated and sent June 29, 2020 to the CRA's noted the three different DOFD's being reported on her Equifax (DOFD of April 2016), Experian (DOFD of January 2016), and Trans Union (DOFD of March 2016) credit reports.

22. Upon receipt of Ms. Wireman's disputes, the CRA's had an affirmative duty under 15 U.S.C. § 1681i(a)(2) to send WFC prompt notice of Ms. Wireman's dispute within five (5) business days of receiving each dispute, <u>and</u> to conduct their own individual investigation of Ms. Wireman's disputes.

23. The CRA's notified WFC of Ms. Wireman's dispute which triggered WFC's duty to re-investigate the debt under 15 U.S.C. § 1681s-2(b).

24. WFC failed to conduct a reasonable investigation of Ms. Wireman's dispute and continued to report contradictory account information for the WFC Loan, including furnishing three different DOFD's and different and increasing amounts due in the WFC Tradeline reported and published by each of the CRA's, in that, after the dispute Equifax reported a past-due balance of $427, and Experian and Trans Union each reported a past-due balance of $784.

25. Equifax's post-investigation credit reports for Ms. Wireman continued to note an incorrect DOFD of April 2016 and failed to note that Ms. Wireman had disputed the disputed the credit information furnished by WFC in connection with the WFC Tradeline.

26. Equifax failed to conduct a reasonable investigation of Ms. Wireman's disputes by failing to correct the erroneous DOFD and failing to note that she had disputed the WFC Loan and WFC Tradeline.

27. WFC's and Equifax's failure to correct and update Ms. Wireman's consumer credit report has adversely affected Ms. Wireman by allowing false, negative credit information to appear on his consumer credit report, which negatively impacts Ms. Wireman's creditworthiness and credit score and caused her to be denied credit and a great deal of anxiety, frustration, and mental upset.

**II.   Facts as to Heyman Law, LLC and Trans Union, LLC**

28. On March 9, 2020, Defendant Heyman Law, LLC ("Heyman Law") sent Ms.

Wireman a dunning letter in an attempt to collect a debt that Heyman Law alleged she owed to DSWW III, LLC ("DSWW") in connection with an apartment-lease debt (the "Lease Debt").

29. The Lease Debt was incurred for personal, family, and/or household purposes, which makes the Lease Debt a "debt" within the meaning of the FDCPA.

30. Upon receipt of Heyman Law's March 9, 2020 dunning letter, Ms. Wireman exercised her statutory right under 15 U.S.C. § 1692g to request validation and verification of the Lease Debt.

31. In response to Ms. Wireman's debt-validation-and-verification letter, Heyman Law sent Ms. Wireman documents that showed that Ms. Wireman owed nothing under the Lease Deb and that she had actually overpaid on the lease.

32. The documents sent by Heyman Law included a "Tenant Ledger" for her lease account and a Lease Agreement for October 1, 2018 through September 30, 2019 (the "Lease Agreement").

33. Of importance, the Lease Agreement noted that the rent was $700 due on the first of each month.

34. The Lease Agreement also included a section titled "Delinquent Rent" that provides:

> 1.4 DELINQUENT RENT.
>
> If rent is not received by the fifth (5th) day of the month, in addition to any other rights or remedies of Manager on account of such nonpayment, Tenant shall pay a late charge of 10%. If rental payment and late charges are not received by the sixth (6th) day of the month, a 7 day notice shall be delivered. Manager may thereafter initiate an action under Kentucky law for possession of the Premises and all such damages permitted by law.


X_____
Jewell Wireman

35. The Tenant Ledger noted that Ms. Wireman made the following rent payments to DSWW on the following dates:

| | |
|---|---|
| 09/30/18: | $700 |
| 10/31/18: | $700 |
| 11/01/18: | $700 |
| 12/01/18: | $700 |
| 01/30/19: | $700 |
| 02/09/19: | $100 |
| 02/28/19: | $720 |
| 03/29/19: | $730 |

|  |  |
|---|---|
| 04/30/19: | $738 |
| 05/30/19: | $700 |
| 06/29/19: | $720 |
| 07/31/19: | <u>$700</u> |
| TOTAL | $7,908 |

36. Despite the record of on time or early payments, the Tenant Ledger states that DSWW charged Ms. Wireman $30 late fees for October 2018 through April 2019, which totals $210 in late fees; and late fees of $70 for May 2019 through August 2019, which totals $280 in late fees. Altogether the Tenant Ledger includes $480 of improperly imposed late fees.

37. The late fees noted in the Tenant Ledger are wrong and improper for two reasons: **(i)** Ms. Wireman made her $700 rent payments on or before the due date; and **(ii)** the late-charge provision in the Lease Agreement does not provide for any amount of late charges.

38. The Lease Agreement provides that "Tenant shall pay a late charge of 10%" but does not specify the component charge or amount the 10% late charge is assessed. Therefore the 10% late charge is meaningless.

39. The meaningless nature of the 10% late charge is made apparent since the apartment management company that drafted the Lease Agreement imposed late fees of $30 and $70 under the same agreement.

40. The Dunning letters sent by Heyman Law to Plaintiff were attempts to collect a debt on behalf of its client, who is *the original creditor,* DSWW III, LLC.

41. In addition to the dunning letters, Heyman Law also attempted to collect the Lease Debt from Ms. Wireman by reporting and continuing to report negative credit information about Ms. Wireman regarding the Lease Debt to the CRA's. *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'").

42. Heyman Law also falsely reported and is continuing to report that Ms. Wireman owes $960 on the Lease Debt to the CRA's when the Tenant Ledger objectively shows Ms. Wireman owes nothing under the Lease Agreement.

43. Additionally, a hard inquiry for Ms. Wireman's credit report by Heyman Law dated April 27, 2020 is appearing on her Trans Union credit report.

44. Ms. Wireman sent multiple disputes to the CRA's that include disputes of the false

credit information furnished by Heyman Law in connection with the Lease Debt disputing the amount and the existence of the Lease Debt.

45.  Upon receipt of Ms. Wireman's disputes, the CRA's had an affirmative duty under 15 U.S.C. § 1681i(a)(2) to send Heyman Law prompt notice of Ms. Wireman's dispute within five (5) business days of receiving each dispute conduct their own investigation of Ms. Wireman's disputes.

46.  The CRA's notified Heyman Law of Ms. Wireman's disputes which triggered Heyman Law's duty to re-investigate the debt under 15 U.S.C. § 1681s-2(b).

47.  Heyman Law failed to conduct a reasonable investigation of Ms. Wireman's disputes.

48.  After investigating Ms. Wireman's disputes, Heyman Law continued to falsely and inaccurately report that Ms. Wireman owed $960 on the Lease Debt. Further, Heyman Law failed to note that Ms. Wireman had disputed the Lease Debt in the credit information it furnished to the CRA's.

49.  On September 24, 2020, Ms. Wireman sent a dispute letter to Trans Union disputing the hard or regular inquiry by Heyman Law dated April 27, 2020 published on her Trans Union credit report. Her September 24. 2020 dispute letter stated in pertinent part:

> The above hard or "regular" inquiry by Heyman Law, LLC is incorrect and improper. Heyman Law is attempting to collect an apartment rental debt from me that I do not owe.
>
> I've included a copy of debt collection letter I received from Heyman Law dated July 01, 2020 that verifies this. I did not and could not have applied for credit from Heyman Law because Heyman Law does not issue credit or make loans. It is a collection law firm.
>
> Consequently, this should be at most a soft inquiry made for purposes of collection or account review. Please delete this inquiry immediately.

50.  The letter from Heyman Law that Ms. Wireman included with her written dispute to Trans Union made clear that Heyman Law was not the original creditor and was attempting to collect a debt from Ms. Wireman *on behalf* of DSWW III, LLC.

51.  Receipt of Ms. Wireman's letter triggered Trans Union's duty to conduct a reasonable investigation of Ms. Wireman's dispute as to the improper hard inquiry by Heyman Law on April 27, 2020 that Trans Union published to its users and subscribers as to Ms. Wireman.

52. Trans Union failed to conduct a reasonable investigation of Ms. Wireman's dispute. Despite being put on clear and plain notice that Ms. Wireman did <u>not</u> initiate and could not have initiated a credit transaction with Heyman Law, Trans Union in its dispute response to Ms. Wireman verified that it was properly publishing the Heyman Law April 27, 2020 inquiry as a hard inquiry:



53. A consumer reporting agency like Trans Union may only publish credit reports about a consumer like Ms. Wireman that includes a record of third-party requests for her credit report if and only if those third-party requests were made in connection with a credit or insurance transaction initiated by the consumer.

54. Consumer reporting agencies classify "user" requests for consumer reports as either a "hard" or a "soft" credit inquiry, depending on the type of inquiry made by the requesting "user."

55. As explained on the Credit Karma website which is run by Trans Union, LLC:

> There are two kinds of inquiries that can occur on your credit report: hard inquiries and soft inquiries. While both types of credit inquiries enable a third party, such as you or a lender, to view your credit report, only a hard inquiry can negatively affect your credit score.
>
> **What is a Hard Inquiry?**
>
> Hard inquiries occur when a financial institution, such as a lender or credit card issuer, checks your credit report when making a lending decision. For example, hard inquiries commonly take place when a consumer applies for a loan, credit card, or mortgage. **You typically have to authorize a hard inquiry**. Most important to note, **hard inquiries will lower your credit score by a few points and remain on your credit report for two years**. As time passes, the damage to your credit score will decrease until the hard inquiry falls off your credit report.
>
> **What is a Soft Inquiry?**

> Soft inquiries occur when a person or company checks your credit report as a background check, such as when a potential employer checks your credit, when you are "pre-approved" for credit card offers, and when you check your own credit score. **A soft inquiry can occur without your permission.** Soft inquiries may be recorded in your credit report, depending on the credit bureau**, but they won't affect your credit score in any way.**

https://www.creditkarma.com/article/hard_inquiries_and_soft_inquiries (visited November 9, 2020) (bolding added).

    56.    Similarly, Trans Union's website explains:

> ### Types of Credit Inquiries
>
> A hard credit inquiry occurs when a potential lender examines your credit report and uses that information to decide whether to extend an offer for credit. For instance, if you apply for a home mortgage or a car loan, your lender will make a hard inquiry of your credit to help determine if you qualify for the loan.
>
> A soft credit inquiry, on the other hand, is a more routine check that can be done without your permission. A common example of a soft inquiry is when a lender you're currently doing business with checks your credit to make sure you're still creditworthy. You can also trigger a soft inquiry yourself if you check your own credit.
>
> ### Effect on Credit Score
>
> *When it comes to your credit score, the only type of inquiry you have to worry about is <u>a hard inquiry</u>*. A soft inquiry does not affect a credit score at all, since it's not an application for credit. Generally speaking, it's a good idea to limit the number of hard inquiries you make. *A typical hard inquiry could <u>knock up to five points off a credit score</u>*.
>
> Credit scoring models tend to associate a high number of hard inquiries with elevated risk. This means that if you have six or more hard inquiries on your credit reports, you may be up to eight times more likely to file bankruptcy than someone with no hard inquiries. As a result, creditors might be less likely to extend you credit at decent interest rates.[2]

---

2    https://www.transunion.com/blog/credit-advice/the-difference-between-hard-and-soft-credit-inquiries

57. And as explained on the myfico.com[3] website:

> Credit inquiries are requests by a "legitimate business" to check your credit.
>
> As far as your FICO® score is concerned, credit inquiries are classified as either "hard inquiries" or "soft inquiries"–**only hard inquiries have an affect on your FICO score.**
>
> Soft inquiries are all credit inquiries where your credit is NOT being reviewed by a prospective lender. These include inquiries where you're checking your own credit (such as checking your score in myFICO), credit checks made by businesses to offer you goods or services (such as promotional offers by credit card companies), or inquiries made by businesses with whom you already have a credit account.
>
> **Hard inquiries are inquiries where a potential lender is reviewing your credit because you've applied for credit with them**. These include credit checks when you've applied for an auto loan, mortgage or credit card.... **A FICO score takes into account only *voluntary* inquiries that result from your application for credit.** The information about inquiries that can be factored into your FICO score includes:
>
> - Number of recently opened accounts, and proportion of accounts that are recently opened, by type of account.
>
> - Number of recent credit inquiries.
>
> - Time since recent account opening(s), by type of account.
>
> - Time since credit inquiry(ies).
>
> - **A FICO score does not take into account any involuntary inquiries made by businesses with whom you did not apply for credit**, inquiries from employers, or your own requests to see your credit report.

---

(visited November 9, 2020; bolding in original and emphasis and underlining added).

[3] "myFICO is the consumer division of FICO. Since its introduction 20 years ago, the FICO® Score has become a global standard for measuring credit risk in the banking, mortgage, credit card, auto and retail industries. **90 of the top 100 largest U.S. financial institutions use the FICO Score to make consumer credit decisions**." https://www.myfico.com/Company/AboutUs.aspx (visited November 9, 2020) (emphasis added).

www.myfico.com/crediteducation/questions/inquiry-credit-score.aspx (visited November 9, 2020) (bolding and emphasis added).

58.     Whether a consumer reporting agency or FICO categorizes a credit inquiry as "hard" or "soft" depends directly on the user of the report and whether the user classifies its request as a voluntary or involuntary request, *i.e.* whether the request was made in connection with a credit transaction initiated by the consumer.

59.     Heyman Law's inquiry for Ms. Wireman's consumer credit report on April 27, 2020 was involuntary because Ms. Wireman did not initiate a credit transaction with Heyman Law by applying for credit with Heyman Law on or about April 27, 2020. Indeed, Ms. Wireman never applied for credit with Heyman Law.

60.     After April 27, 2020, Trans Union published credit reports to its users and third-party subscribers that included a record of Heyman Law's request for Ms. Wireman' credit report on April 27, 2020.

61.     The erroneous hard credit inquiry on Ms. Wireman's credit reports published by Trans Union damaged Ms. Wireman in the form of a lowered credit score, loss of credit, higher cost for credit, emotional upset and anxiety.

62.     Trans Union violated the FCRA by failing to conduct a reasonable investigation of Ms. Wireman's dispute concerning the Heyman Law April 27, 2020 hard inquiry and by publishing consumer reports to its users and subscribers concerning Ms. Wireman that included a record of Heyman Law's request for Ms. Wireman's Trans Union credit report on April 27, 2020.

63.     Heyman Law violated the FDCPA by misrepresenting the amount and status of the Lease Debt; publishing false and inaccurate credit information to one or more CRA's concerning the Lease Debt, including failing to note that Ms. Wireman had disputed the Lease Debt; and attempting to collect a debt from Ms. Wireman that she does not owe, which violations each created a material risk of harm to the interests recognized by Congress in enacting the FDCPA.

## CLAIMS FOR RELIEF

**I.     Claims against World Finance Company of Kentucky, LLC *d/b/a* World Finance Corporation**

64.     The foregoing acts and omissions of Defendant World Finance Company of Kentucky, LLC *d/b/a* World Finance Corporation ("WFC") constitute violations of the FCRA in that, after being informed by one or more consumer reporting agencies that Ms. Wireman disputed

the accuracy of the information it was providing concerning Ms. Wireman, WFC willfully failed to conduct a proper investigation of Ms. Wireman's disputes filed with one or more CRA's that WFC was furnishing false and inaccurate credit information about Ms. Wireman and WFC Loan.

65. WFC willfully failed to review all relevant information purportedly provided by one or more CRA's to WFC in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

66. WFC willfully failed to direct the CRA's to delete inaccurate information about Ms. Wireman pertaining to the WFC Loan as required by 15 U.S.C. § 1681s-2(b)(C). In particular, WFC **(i)** continued to falsely and inaccurately report different, false and inaccurate balances and DOFDs to the CRA's, and **(ii)** failed to note in the credit information that it furnished to the CRA's that Ms. Wireman disputed the WFC Tradeline.

67. Ms. Wireman has a private right of action to assert claims against WFC arising under 15 U.S.C. § 1681s-2(b).

68. WFC is liable to Ms. Wireman for the actual damages she has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact or up to $1,000.00 in statutory damages, whichever is greater, punitive damages and her reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

69. Alternatively, WFC's conduct, actions and inactions were negligent rendering WFC liable to Ms. Wireman under 15 U.S.C. § 1681o for actual damages, attorney's fees and costs.

## II. Claims against Equifax Information Services, LLC

70. The foregoing acts and omissions of Defendant Equifax Information Services, LLC ("Equifax") constitute violations of the FCRA.
### A. Violations of 15 U.S.C. § 1681(i)(a)

71. Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation of Ms. Wireman's dispute concerning the WFC Tradeline.

72. As a result of Equifax's failure to conduct a reasonable investigation of Ms. Wireman's dispute, Equifax continued to inaccurately to report a false and inaccurate DOFD for the WFC Tradeline in the reports it published to its users and subscribers causing Ms. Wireman to suffer actual damages in the form of a lowered credit score, denial of credit, frustration, irritation, and emotional upset and distress.

73. Equifax's conduct, actions and inactions were willful rendering Equifax liable to Ms. Wireman under 15 U.S.C. § 1681n for her actual damages, statutory damages, punitive damages, attorney's fees and costs.

74. Alternatively, Equifax's conduct, actions and inactions were negligent rendering Equifax liable to Ms. Wireman under 15 U.S.C. § 1681o for actual damages, attorney's fees and costs.

### B. Violations of 15 U.S.C. § 1681c(f)

75. Ms. Wireman disputed the WFC Tradeline in writing with Equifax triggering the duty of WFC under 15 U.C.S. § 1681s-2(a)(3) and 15 U.S.C. § 1692e(8) to notify Equifax that Ms. Wireman had disputed WFC Loan underlying the WFC Tradeline.

76. After being notified by WFC that Ms. Wireman had disputed the WFC Tradeline, Equifax had a duty under 15 U.S.C. § 1681c(f) to indicate in the credit reports that it published to its users, including to Ms. Wireman, that Ms. Wireman had disputed the tradelines furnished by WFC.

77. Ms. Wireman' post-dispute Equifax credit reports failed to indicate that Ms. Wireman had disputed WFC Tradeline.

78. Equifax willfully or in the alternative negligently violated the Fair Credit Reporting Act, 15 U.S.C. § 1681c(f).

79. Equifax's conduct, actions and inactions were willful rendering Equifax liable to Ms. Wireman under 15 U.S.C. § 1681n for her actual damages, statutory damages, punitive damages, attorney's fees and costs.

80. Alternatively, Equifax's conduct, actions and inactions were negligent rendering Equifax liable to Ms. Wireman under 15 U.S.C. § 1681o for her actual damages, attorney's fees and costs.

### III. Claims against Heyman Law, LLC

### A. Violations of the FDCPA

81. The foregoing acts and omissions of Defendant Heyman Law, LLC ("Heyman Law") constitute violations of the FDCPA which violations each created a material risk of harm to the interests recognized by Congress in enacting the FDCPA.

82. Heyman Law violated 15 U.S.C. § 1692e, 15 U.S.C. § 1692f, and one or more

subsections of each statute by: **(i)** misrepresenting the status and amount of the Lease Debt in the credit information Heyman Law furnished to one or more CRA's; **(ii)** attempting to collect a debt from Ms. Wireman that she does not owe; and **(iii)** publishing false credit information about Ms. Wireman to one or more CRA's, including failing to report that Ms. Wireman had disputed the Lease Debt.

### B. Violations of the FCRA

83. The foregoing acts and omissions of Defendant Heyman Law, LLC ("Heyman Law") constitute violations of the FCRA when, after being informed by one or more CRA's that Ms. Wireman disputed the accuracy of the information it was providing concerning Ms. Wireman, Heyman Law willfully failed to conduct a proper investigation of Ms. Wireman's disputes filed with one or more CRA's that Heyman Law was furnishing false and inaccurate credit information about Ms. Wireman and the Lease Debt.

84. Heyman Law willfully failed to review all relevant information purportedly provided by one or more CRA's to Heyman Law in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

85. Heyman Law willfully failed to direct the consumer reporting agencies to delete inaccurate information about Ms. Wireman pertaining to the Lease Debt as required by 15 U.S.C. § 1681s-2(b)(C). In particular, Heyman Law **(i)** continued to falsely and inaccurately report to the CRAs that Ms. Wireman owed $960 under the Lease Debt, **(ii)** failed to delete the credit information it was furnishing about Ms. Wireman, and **(iii)** failed to note in the credit information that it furnished to the CRA's that Ms. Wireman disputed the Lease Debt.

86. Ms. Wireman has a private right of action to assert claims against Heyman Law arising under 15 U.S.C. § 1681s-2(b).

87. Heyman Law is liable to Ms. Wireman for the actual damages she sustained by reason of its willful violations of the FCRA in an amount to be determined by the trier of fact or up to $1,000.00 in statutory damages, whichever is greater, punitive damages and her reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

88. Alternatively, Heyman Law's conduct, actions and inactions were negligent rendering Heyman Law liable to Ms. Wireman under 15 U.S.C. § 1681o for her actual damages, attorney's fees and costs.

## IV. Claims against Trans Union, LLC

### A. Violations of 15 U.S.C. § 1681(i)(a)

89. The foregoing acts and omissions of Defendant Trans Union, LLC ("Trans Union") constitute violations of the FCRA, 15 U.S.C. § 1681i(a)(1), by Trans Union failing to conduct a reasonable investigation of Ms. Wireman's dispute concerning the erroneous Heyman Law hard credit inquiry on April 27, 2020.

90. As a result of Trans Union's failure to conduct a reasonable investigation of Ms. Wireman's dispute, Trans Union continued to inaccurately to report in the reports it published to its users and subscribers that Heyman Law had requested Ms. Wireman's credit report on April 27, 2020 causing Ms. Wireman to suffer actual damages in the form of a lowered credit score, denial of credit, irritation, emotional upset and distress.

91. Trans Union's conduct, actions and inactions were willful, rendering Trans Union liable to Ms. Wireman under 15 U.S.C. § 1681n for her actual damages, statutory damages, punitive damages, attorney's fees and costs.

92. Alternatively, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable to Ms. Wireman under 15 U.S.C. § 1681o for actual damages, attorney's fees and costs.

### B. Violations of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681b(c)(3)

93. After April 27, 2020, Trans Union published credit reports to its users and third-party users and subscribers that included a record of Heyman Law's request for Ms. Wireman's Trans Union's credit report on April 27, 2020.

94. Ms. Wireman did not initiate a credit transaction with Heyman Law on April 27, 2020.

95. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Ms. Wireman by publishing credit reports about Ms. Wireman that included a record of Heyman Law's request made on April 27, 2020 for Ms. Wireman's credit reports.

96. Trans Union violated 15 U.S.C. § 1681b(c)(3) by publishing to its subscribers and users credit reports about Ms. Wireman that included a record of Heyman Law's request made on April 27, 2020 for Ms. Wireman's Trans Union credit report.

97. Trans Union's conduct, actions and inactions were willful rendering Trans Union liable under 15 U.S.C. § 1681n to Ms. Wireman for her actual damages, statutory damages, punitive damages, attorney's fees and costs.

98. Alternatively, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable to Ms. Wireman under 15 U.S.C. § 1681o for her actual damages, attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jewell Wireman requests the Court grant her the following relief against each Defendant:

1. Award Plaintiff statutory damages against each Defendant pursuant to the FDCPA and/or FCRA;

2. Award Plaintiff her actual damages against each Defendant pursuant to the FDCPA and/or FCRA;

3. Award Plaintiff punitive damages under 15 U.S.C. § 1681n against each Defendant for each Defendant's willful violations of the FCRA;

4. Award Plaintiff her attorney's fees, litigation expenses and costs;

5. A trial by jury; and

6. Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ James R. McKenzie
James R. McKenzie
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:   (502) 371-2179
Fax:   (502) 257-7309
jmckenzie@jmckenzielaw.com

James H. Lawson
*Lawson at Law, PLLC*
115 S. Sherrin Avenue, Suite 5

Louisville, KY 40207
Tel:   (502) 473-6525
Fax:   (502) 473-6561
james@kyconsumerlaw.com